J-A28011-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SCOTT GRAY | : | |
| | : | |
| Appellant | : | No. 509 WDA 2020 |

Appeal from the Judgment of Sentence Entered December 17, 2019
In the Court of Common Pleas of Cambria County Criminal Division at
No(s):  CP-11-CR-0000702-2018

BEFORE:  OLSON, J., MURRAY, J., and McCAFFERY, J.

MEMORANDUM BY OLSON, J.:                    **FILED: MARCH 8, 2021**

Appellant, Scott Gray, appeals from the December 17, 2019 judgment of sentence imposing an aggregate term of 18 to 60 months' incarceration followed by 24 months' probation after a jury convicted Appellant of corruption of minors - course of conduct (a third-degree felony), corruption of minors (a first-degree misdemeanor), indecent assault, and endangering the welfare of a child.[1]  We affirm.

The record demonstrates that beginning on the evening of March 17, 2018, and continuing until the morning of March 18, 2018, the victim, a minor,[2] and her best friend ("best friend"), also a minor, attended a

---

[1] 18 Pa.C.S.A. §§ 6301(a)(1)(ii), 6301(a)(1)(i), 3126(a)(7), and 4304(a)(1), respectively.

[2] At the time of the incident, the victim was 11 years old.

"sleepover" at Appellant's house. As a result of Appellant's inappropriate actions that occurred during the course of the sleepover, a jury convicted Appellant of the aforementioned crimes. On December 17, 2019, the trial court sentenced Appellant.[3] Appellant filed a timely post-sentence motion

_____

[3] The trial court imposed a sentence of 18 to 60 months' incarceration for corruption of minors – course of conduct (a third-degree felony) and 6 to 36 months' incarceration for indecent assault. The sentence imposed for indecent assault was set to run concurrent to the sentence imposed for corruption of minors – course of conduct. For purposes of sentencing, the corruption of minors (a first-degree misdemeanor) conviction merged with the corruption of minors – course of conduct conviction. Appellant was sentenced to 24 months' probation for endangering the welfare of a child. Appellant's probation was set to run consecutive to his sentences of incarceration.

Pursuant to the Sex Offender Registration and Notification Act ("SORNA"), 42 Pa.C.S.A. §§ 9799.10 – 9799.41, Appellant's conviction for corruption of minors – course of conduct was classified as a Tier I offense, *see* 42 Pa.C.S.A. § 9799.14(b)(8), and his conviction for indecent assault (18 Pa.C.S.A. § 3126(a)(7)) was classified as a Tier III offense, *see* 42 Pa.C.S.A. § 9799.14(d)(8). Prior to sentencing and upon evaluation, the Sexual Offenders Assessment Board determined that Appellant was not a sexually violent predator, as defined by 42 Pa.C.S.A. § 9799.12. *See* N.T., 12/17/19, at 7. At sentencing, the trial court incorrectly notified Appellant that he was required to register under SORNA for a period of 15 years. *See* N.T., 12/17/19, at 5, 26; *see also* 42 Pa.C.S.A. § 9799.15(a)(1) (stating, "[a]n individual convicted of a Tier I sexual offense . . . shall register for a period of 15 years"). As an individual convicted of a Tier III offense (here, indecent assault, 18 Pa.C.S.A. § 3126(a)(7)), Appellant is required to register for life pursuant to Section 9799.15(a)(3) of SORNA. The trial court's failure to correctly inform Appellant of his registration obligations pursuant to SORNA, however, does not relieve Appellant of life registration obligation. *See* 42 Pa.C.S.A. § 9799.23(b)(1) (stating, "[f]ailure by the [trial] court to provide the information required [by SORNA], to correctly inform a sexual offender of the sexual offender's obligations[,] or to require a sexual offender to register shall not relieve the sexual offender from the requirements of [SORNA]").

seeking relief in the form of: (1) an acquittal,[4] (2) an arrest of judgment,[5] (3) a new trial, and (4) a modification of sentence. The trial court entertained argument on Appellant's post-sentence motion and subsequently denied relief on March 24, 2020. This appeal followed.[6]

Appellant raises the following issues for our review:

_____

[4] "A motion for judgment of acquittal challenges the sufficiency of the evidence to sustain a conviction on a particular charge, and is granted only in cases in which the Commonwealth has failed to carry its burden regarding that charge." **Commonwealth v. Emanuel**, 86 A.3d 892, 894 (Pa. Super. 2014) (citation omitted), *appeal denied*, 95 A.3d 276 (Pa. 2014); **see also** Pa.R.Crim.P. 606 (stating, a defendant may challenge the sufficiency of the evidence by, *inter alia*, filing a motion for judgment of acquittal after sentencing).

[5] A motion for arrest of judgment is a challenge to the legal sufficiency of the trial court's judgment and "is limited to causes appearing on the face of the record or insufficiency of the evidence." **Commonwealth v. Haines**, 166 A.3d 449, 459 n.14 (Pa. Super. 2017) (citation and original quotation marks omitted), *appeal denied*, 176 A.3d 233 (Pa. 2017). "Causes appearing on the face of the record include such fundamental defects as lack of jurisdiction, former jeopardy[,] or failure of an indictment or information to charge an offense." **Haines**, 166 A.3d at 459 n.14 (citation omitted).

[6] A review of Appellant's notice of appeal demonstrates that he sought to appeal the March 24, 2020 order denying his post-sentence motion. **See** Notice of Appeal, 4/22/20. It is well-settled that "[i]n a criminal action, [an] appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (citation omitted), *appeal denied*, 800 A.2d 932 (Pa. 2002). Therefore, Appellant's appeal properly lies from his December 17, 2019 judgment of sentence.

Both Appellant and the trial court complied with Pa.R.A.P. 1925.

[1.]   Whether the [trial] court should have arrested judgment on [the] corruption of minors[ - course of conduct (a third-degree felony) conviction because] no course of conduct was established by the Commonwealth?

[2.]   Whether the [trial] court[] erred in failing to [assess the competence of the victim and the victim's best friend to testify before they were called as witnesses at trial]?

[3.]   Whether the trial court erred in failing to grant [an] arrest of judgment or [a] new trial when [a] Commonwealth witness gave an opinion on whether the [victim] was telling the truth?

[4.]   Whether the Commonwealth committed [prosecutorial] misconduct in its closing argument [by] reciting to the jury that the only truth [Appellant] told was where he lived and what his name was [and that] "everything else was a lie"?

Appellant's Brief at 4 (extraneous capitalization omitted).[7]

Appellant's first issue, within the context of review of an order denying a motion for an arrest of judgment, challenges the sufficiency of the evidence introduced to support Appellant's conviction for corruption of minors - course of conduct. Our standard and scope of review of a challenge to the sufficiency of the evidence is well-settled.

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and

_____

[7] For ease of disposition, Appellant's issues have been reorganized.

- 4 -

inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proof or proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all the evidence actually received must be considered. Finally, the trier[-]of[-]fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part[,] or none of the evidence.

*Commonwealth v. Pappas*, 845 A.2d 829, 835-836 (Pa. Super. 2004) (citation omitted), *appeal denied*, 862 A.2d 1254 (Pa. 2004); *see also Commonwealth v. Brown*, 52 A.3d 1139, 1163 (Pa. 2012) (stating, that in reviewing a claim of insufficient evidence, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, **any** rational trier[-]of[-]fact could have found the essential elements of the crime beyond a reasonable doubt" (emphasis in original)).

[T]he [trier-of-fact's] individualized assessment of the credibility of the trial evidence is, as a general principle, not to be questioned by an appellate court as part of its review, even if the evidence is conflicting. [C]ourts presume the [trier-of-fact] resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. [M]ere inconsistency and conflicts in witnesses testimony, by [themselves], will not furnish a basis for an appellate court to reverse a conviction [] on the grounds of evidentiary insufficiency.

*Brown*, 52 A.3d at 1165 (citations omitted). Rather, the trier-of-fact's resolution will only be disturbed "in those exceptional instances [] where the evidence is so patently unreliable that the [trier-of-fact] was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." *Id.*, citing *Commonwealth v. Karkaria*, 625 A.2d 1167, 1170 (Pa. 1993).

To preserve a sufficiency claim, the appellant's Rule 1925(b) statement must specify the element or elements upon which the evidence was insufficient. *Commonwealth v. Williams*, 959 A.2d 1252, 1257 (Pa. Super. 2008).

Section 6301 of the Pennsylvania Crimes Code defines the offense of corruption of minors as follows:

**§ 6301. Corruption of minors**

**(a) Offense defined.**—

(1)(i) Except as provided in subparagraph (ii), whoever, being of the age of 18 years and upwards, by any act corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of any crime, or who knowingly assists or encourages such minor in violating his or her parole or any order of court, commits a misdemeanor of the first degree.

(ii) Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 commits a felony of the third degree.

18 Pa.C.S.A. § 6301(a). "Thus, with respect to a charge of corruption of minors as a third-degree felony, the trial court must instruct the jury that the Commonwealth must prove that [a defendant] engaged in a 'course of conduct.'" *Commonwealth v. (John) Smith*, 206 A.3d 551, 564 (Pa. Super. 2019), *citing* 18 Pa.C.S.A. § 6301(a)(1)(ii), *appeal denied*, 217 A.3d 202 (Pa. 2019). "If the Commonwealth cannot show a course of conduct, the corruption of minors offense is graded as a first-degree misdemeanor under

18 Pa.C.S.A. § 6301(a)(1)(i)." **Smith**, 206 A.3d at 564. This Court has defined "course of conduct" as "multiple acts over time" or "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct" that corrupted or tended to corrupt the minor's morals. **Id.** at 566.

Here, Appellant acknowledges that the trial court properly instructed the jury that a finding of "course of conduct" was necessary to convict Appellant of corruption of minors as a third degree felony and that the term "course of conduct" meant "over a period of time." Appellant's Brief at 15. Appellant argues, however, that his actions of drawing an outline of the victim's buttock on the sidewalk, pushing the victim's head for five seconds onto a pillow that was positioned on Appellant's lap, or rubbing the victim's body over her clothes for 10 to 15 minutes while Appellant laid next to the victim in a make-shift bed on the floor did not amount to a "course of conduct" sufficient to support a conviction of corruption of minors as a third degree felony. **Id.** at 14-15. Appellant contends his actions did not rise to the level of "a pattern of actions composed of more than one act over a period of time, however short, evidencing a continuity of conduct." **Id.** at 16.

A review of the record demonstrates that on the evening of March 17, 2018, the victim and her best friend attended a sleepover at Appellant's house. N.T., 8/27/19, at 27-28. While watching a movie, the victim sat on a couch in between Appellant and her best friend. **Id.** at 28. The victim stated that during the movie, "[Appellant] put a pillow on his lap and decided to force

my head down on the pillow. And my head was on the pillow for about five seconds and I got up and switched spots with [my best friend] and we finished [watching] the movie." *Id.* The victim stated that Appellant's actions made her feel "very uncomfortable." *Id.* The victim stated that after the movie ended, Appellant set up three make-shift beds, "[Appellant's bed] on one end, [my best friend's bed] in the middle and [my bed] on the other end", on the living room floor using blankets and pillows. *Id.* at 30. After falling asleep on her "bed," the victim stated she was awoken around 2:00 a.m. upon a "pillow hit to the face" by Appellant. *Id.* at 31. The victim stated that Appellant moved her bed to the middle of the sleeping arrangements so they could talk. *Id.* During conversation, Appellant began to rub the victim's arms and legs, touching her breasts and genitalia in the process, and tried to pull the pant-leg of her clothing up. *Id.* The victim stated that Appellant's actions lasted about 10 to 15 minutes and that his actions made her feel "uncomfortable and scared." *Id.* at 34. When asked if there were prior actions by Appellant that made her feel uncomfortable, the victim described an event, which occurred a couple of weeks prior to March 17, 2018, in which Appellant drew an image of the victim's buttock with chalk on the pavement and laughed at it. *Id.* at 40.

The phrase "course of conduct" required Appellant to engage in a pattern of conduct consisting of two or more acts that evidenced a continuity of purpose to commit a Chapter 31 sexual offense. *Commonwealth v. Kelly*, 102 A.3d 1025, 1031-1032 & n.4 (Pa. Super. 2014). In viewing the evidence

in the light most favorable to the Commonwealth, as verdict winner, we find there was sufficient evidence to enable the jury, as trier-of-fact, to find that Appellant engaged in a course of conduct that gave rise to a Chapter 31 sexual offense, namely the indecent assault of the victim. On the evening of March 17, 2018, and into the morning of March 18, 2018, Appellant engaged in three distinct and separate acts that ultimately led to his commission of an indecent assault upon the victim pursuant to 18 Pa.C.S.A. § 3126(a)(7).[8] First, Appellant pushed the victim's head onto a pillow that was positioned on Appellant's lap so that the victim's face was near Appellant's genitalia. At 2:00 a.m., Appellant woke the victim by hitting her in the face with a pillow for the purpose that the victim move her bed next to Appellant's bed. After engaging in conversation with the victim, Appellant began to rub the victim's legs and arms. At this point, Appellant touched the victim's breasts and genitalia with his hands. Based upon the totality of the circumstances, we find there was sufficient evidence for the jury, as fact-finder, to conclude that

_____

[8] A person is guilty of indecent assault pursuant to 18 Pa.C.S.A. § 3126(a)(7) "if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and . . . the complainant is less than 13 years of age[.]" 18 Pa.C.S.A. § 3126(a)(7). Section 3101 of the Pennsylvania Crimes Code defines "indecent contact" as "[a]ny touching of the sexual or other intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any person." 18 Pa.C.S.A. § 3101.

Appellant engaged in multiple acts in continuation of his purpose to have indecent contact with the victim by inappropriately touching her sexual or intimate parts. Therefore, Appellant's first issue is without merit.[9]

Appellant's second and third issues raise challenges to the trial court's denial of an arrest of judgment or a new trial based upon admissibility of evidence.

> An appellate court's standard of review of a trial court's evidentiary rulings, including rulings on the admission of hearsay and determinations of witness competency, is abuse of discretion. However, issues of statutory interpretation are questions of law, over which our standard of review is *de novo* and our scope of review is plenary.

*Commonwealth v. Walter*, 93 A.3d 442, 449 (Pa. 2014) (citations omitted).

In his second issue, Appellant argues that he is entitled to an arrest of judgment because the trial court erred in permitting the testimony of the victim and her best friend when both witnesses were under the age of 14 at the time of trial and "neither the trial court nor the Commonwealth made any effort to determine the competenc[e] of either [witness]." Appellant's Brief at 11. Appellant contends that the trial court was required to conduct a competency hearing as to each minor, since both were under the age of 14 at the time of trial, prior to permitting each minor's in-court testimony. *Id.* at

---

[9] We note that the trial court incorrectly analyzed Appellant's first issue as a challenge to the weight of the evidence claim. Trial Court Opinion, 3/24/20, at 7-9. A motion for judgment of acquittal or a motion for arrest of judgment challenges the sufficiency of the evidence and not the weight of the evidence. *See Emanuel*, 86 A.3d at 894; *see also Haines*, 166 A.3d at 459 n.14.

11-13. Appellant acknowledges, however, that "no one noticed [the trial court's failure to conduct a competency hearing as to either minor witness under the age of 14] until the jury was discharged." *Id.* at 8.

Pennsylvania Rule of Evidence 601 states,

### Rule 601. Competency

**(a) General Rule.** Every person is competent to be a witness except as otherwise provided by statute or in these rules.

**(b) Disqualification for Specific Defects.** A person is incompetent to testify if the court finds that because of a mental condition or immaturity the person:

(1) is, or was, at any relevant time, incapable of perceiving accurately;

(2) is unable to express himself or herself so as to be understood either directly or through an interpreter;

(3) has an impaired memory; or

(4) does not sufficiently understand the duty to tell the truth.

Pa.R.E. 601.

"The general rule in Pennsylvania is that every person is presumed competent to be a witness." *Commonwealth v. Delbridge*, 855 A.2d 27, 39 (Pa. 2003), *citing* Rule 601(a). The party challenging the competence of the witness has the burden to assert the challenge and to prove that the witness is, in fact, incompetent to testify. *Rosche v. McCoy*, 156 A.2d 307, 309 (Pa. 1959) (stating, "[c]ompetency is the rule and incompetency the exception"). "A decision on the necessity of a competency hearing is

addressed to the discretion of the trial court." ***Delbridge***, 855 A.2d at 39 (citation omitted).

The presumption of competency to testify does not arise, however, where a child is under the age of 14 at the time he or she is to offer testimony at trial. ***Rosche***, 156 A.2d at 310. Our Supreme Court has historically held "that witnesses under the age of [14] be subject to judicial inquiry into their testimonial capacity." ***Commonwealth v. Hutchinson***, 25 A.3d 277, 290 (Pa. 2011) (citation omitted); ***see also Rosche***, 156 A.2d at 310 (stating, when the witness is "[u]nder [14 years of age,] there must be judicial inquiry as to mental capacity [of the child], which must be more searching in proportion to chronological immaturity"). "A competency hearing of a minor witness is directed to the mental capacity of that witness to perceive the nature of the events about which he or she is called to testify, to understand questions about that subject matter, to communicate about the subject at issue, to recall information, to distinguish fact from fantasy, and to tell the truth." ***Hutchinson***, 25 A.3d 290. "When the competenc[e] of a minor witness is challenged, either the trial court or the district attorney ordinarily asks the minor witness several questions to extract the minor's capacity for understanding the difference between right and wrong and his or her duty to speak truthfully about the matter at hand." ***Commonwealth v. Shearer***, 882 A.2d 462, 469 (Pa. 2005).

The trial court's failure to conduct a competency hearing, however, "constitutes harmless error in light of a minor victim's testimony at trial where

the trial court had the opportunity to observe the minor's demeanor." ***Commonwealth v. Smith***, 167 A.3d 782, 789 (Pa. Super. 2017) (citation omitted), *appeal denied*, 179 A.3d 6 (Pa. 2018). In determining whether a trial court's failure to conduct a pre-testimonial inquiry constitutes harmless error and, therefore, defeats a defendant's claim for relief, our Supreme Court recently stated that the doctrine of harmless error provides that "an error can be harmless only if the appellate court is convinced beyond a reasonable doubt that the error is harmless[, and] the burden of establishing harmlessness beyond a reasonable doubt is borne by the Commonwealth." ***Commonwealth v. King***, 234 A.3d 549, 564 (Pa. 2020) (citation and original quotation marks omitted).

Here, a review of the record demonstrates that the trial court failed to conduct a judicial inquiry into the competence of either the victim or her best friend prior to their in-court testimony. N.T., 8/27/19, 1-132. Appellant, however, did not request a judicial inquiry to determine the competence of either witness, never challenged the competence of either witness prior to, during, or at the conclusion of their testimony, and did not object to the trial court's failure to make such an inquiry. N.T., 8/27/19, at 24-47, 84-89. Assistant District Attorney Joseph Green, Esquire testified at the evidentiary hearing on Appellant's post-sentence motion that during a pre-trial conference, outside of the presence of the jury, he asked both the trial court and Appellant's counsel whether a colloquy should be undertaken as to either minor witness. N.T., 1/30/20, at 5. Counsel for Appellant did not request a

competency hearing, however. *Id.* Furthermore, Appellant's counsel acknowledged at the evidentiary hearing that he did not object to the competence of either witness prior to their appearance as witnesses at trial. *Id.* at 6-7.

A minor witness, who is under the age of 14 at the time the proposed testimony is being offered, is not presumed competent to testify. A trial court, therefore, is required, in all instances where the witness is under the age of 14, to make a judicial pre-testimonial inquiry into the competence of the minor witness. Nonetheless, a party challenging the competence of the minor witness under the age of 14 may not remain silent as to the trial court's failure to conduct such an inquiry but, rather, must lodge an objection to preserve the error on appeal. Where judicial inquiry is required but not undertaken and, importantly, not objected to, the trial court's failure to make such a judicial inquiry does not give rise to a presumption that a witness, even one under the age of 14, lacks competence. Stated another way, we find no authority to support Appellant's assertion that the minor witnesses, who were under the age of 14 at the time of trial, were presumed incompetent to testify in the absence of such a finding after judicial inquiry.

In the case *sub judice*, we find that the trial court erred as a matter of law in failing to conduct a judicial inquiry into the competence of the minor witnesses before either of them provided testimony at trial. Both witnesses were under the age of 14 at the time of trial, and the trial court was required, regardless of whether the Commonwealth or Appellant requested a

- 14 -

competency hearing, to make a judicial inquiry into both witness's capacity to recall events, understand questions, and discern between fact and fiction. Appellant, however, waived any challenge to the trial court's failure to conduct such a judicial inquiry by failing to lodge an objection prior to, during, or at the conclusion of the now-challenged testimony.[10]  Instead, Appellant cross-examined each witness to test the veracity of their recollections.  *See Commonwealth v. McKinley*, 123 A.2d 735, 737 (Pa. Super. 1956) (holding, the failure to object to the competence of a witness under the age of 14 coupled with subjecting the witness to rigorous cross-examination constitutes waiver of the issue); *see also Commonwealth v. Clair*, 326 A.2d 272, 274 (Pa. 1974) (stating, "a party may not remain silent and take chances on a verdict and afterwards complain of matters which, if erroneous, the [trial] court would have corrected" (original brackets omitted)); *Commonwealth v. (Sean) Smith*, 606 A.2d 939, 942 (Pa. Super. 1992) (stating, where a

---

[10] Moreover, a review of the record demonstrates that the trial court's failure to conduct a judicial inquiry as to the competence of either witness was harmless error.  The testimony offered by the victim and her best friend confirms that they were able to recall, in detail, the events, and were able to discern the importance of telling the truth.  N.T., 8/27/19, at 24-46, 84-89. While Appellant objects to the lack of a competency hearing, he has not demonstrated that the witnesses were, in fact, incompetent in that they displayed difficulty with recollection, perception, comprehension, communication, discerning fact from fiction, or misunderstood their obligation to tell the truth.  Rather, Appellant admits that the victim did not "ramble or exaggerate" during her direct and cross-examination.  Appellant's Brief at 13. Not only did Appellant waive his challenge to the competence of the minor witnesses but the trial court error was harmless.

witness is subject to cross-examination by a party, this Court will not consider that party's challenge to the competence of the witness when the party failed to object and, thereby, deprived the trial court of its opportunity to correct the error).

In his third issue, Appellant contends he is entitled to a new trial because the trial court erred in permitting Detective Kevin Gaudlip[11] to opine whether the victim's in-court testimony was consistent with the testimony she provided at a forensic interview. Appellant's Brief at 17-18. Appellant argues that the order granting Appellant's *omnibus* pre-trial motion precluded "the forensic interview specialist or anyone else related thereto from providing an opinion that the [victim] was sexually assaulted." *Id.* at 17.

In **Commonwealth v. Maconeghy**, our Supreme Court reiterated Pennsylvania's longstanding precedent that the determination of witness credibility, in a jury trial, is an exclusive function of the jury and expert witnesses are prohibited specifically from invading this providence. **Commonwealth v. Maconeghy**, 171 A.3d 707, 712 (Pa. 2017). The **Maconeghy** Court opined, that "an expert witness may not express an opinion that a particular complainant was a victim of sexual assault based upon witness accounts couched as a history, at least in the absence of physical

---

[11] Detective Gaudlip was a detective with the Richland Township Police Department in Richland Township, Cambria County, Pennsylvania. N.T., 8/27/19, at 59-60. Detective Gaudlip observed the forensic interview that was conducted with the victim after the incident. *Id.* at 61.

evidence of abuse" because "such testimony intrudes into the province of the jury relative to determining credibility." *Id.* This Court, in *Commonwealth v. McClure*, held that the prohibition of experts offering opinions on witness credibility "can be applied to a police officer in whose testimony a jury could find an [']unwarranted appearance of authority in the subject of credibility,['] something ordinary jurors are able to assess." *Commonwealth v. McClure*, 144 A.3d 970, 977 (Pa. Super. 2016). Challenges to a police officer's opinion regarding a witness's credibility, however, must be raised *via* a contemporaneous objection or the issue is waived on appeal. *Commonwealth v. (William) Smith*, 213 A.3d 307, 309 (Pa. Super. 2019) (stating, "[t]he absence of a contemporaneous objection [at the trial court level] constitutes a waiver of the claim on appeal" (citation omitted)); *see also* Pa.R.A.P. 302(a) (stating, "[i]ssues not raised in the trial court are waived and cannot be raised for the first time on appeal"). "On appeal, we will not consider assignments of error that were not brought to the tribunal's attention at a time at which the error could have been corrected or the alleged prejudice could have been mitigated." *Smith*, 213 A.3d at 309 (citation omitted). Furthermore, the inclusion of the issue in a Rule 1925(b) statement does not "resurrect" the waived claim. *Id.* (citation omitted).

A review of the record demonstrates the following exchange between the Commonwealth and Detective Gaudlip:

[COMMONWEALTH:]    Were you present at [the victim's] forensic interview?

[GAUDLIP:]     I was.

[COMMONWEALTH:]     And the testimony that she gave today, was it consistent with the testimony she gave at the interview?

[GAUDLIP:]     It was.

[COMMONWEALTH:]     That's all the questions I have, Your Honor.

N.T., 8/27/19, at 61. At the conclusion of Detective Gaudlip's testimony, Appellant did not object. Rather, Appellant proceeded to challenge the victim's credibility during the following cross-examination of Detective Gaudlip:

[APPELLANT:]     At any time during [the forensic] interview, did [the victim] recite why she did not wake up [her best friend] when she felt uncomfortable?

[GAUDLIP:]     She did not mention that.

[APPELLANT:]     Did not mention that. Did she mention anything about not trying to [telephone] her mother when she could not get [a response] on text [messaging]?

[GAUDLIP:]     No.

*Id.* at 63.

Upon review, we find that because Appellant failed to lodge a contemporaneous objection to Detective Gaudlip's testimony, Appellant has waived this issue on appeal.[12]

_____

[12] Moreover, in his testimony, Detective Gaudlip did not express his opinion on the veracity and credibility of the victim's sexual abuse allegations. Rather, Detective Gaudlip merely stated that the victim's in-court testimony was consistent with the testimony she provided during her forensic interview.

- 18 -

In his final issue, Appellant argues that he is entitled to a new trial because the Commonwealth committed prosecutorial misconduct during its closing argument. Appellant's Brief at 19-21. Appellant contends that the Commonwealth's statements that "the only truth [Appellant] told was where he lived and what his name was[,] everything else was a lie" prejudiced the jury. *Id.* at 19.

Our Supreme Court has held that the lack of a contemporaneous objection constitutes a waiver of any challenge to the prosecutor's closing remarks. *Commonwealth v. Rivera*, 983 A.2d 1211, 1229 (Pa. 2009) (citation omitted), *cert. denied*, 560 U.S. 909 (2010). Here, a review of the record demonstrates that during closing arguments, the Commonwealth stated,

> [Appellant contends that] everything [the victim] said is a lie. Everything she said is a lie. Didn't happen. What would that little girl have to gain by lying about this? [Appellant] isn't in a position to ground her or take away her cell[ular tele]phone or make her go to bed earlier than she needs to or do chores. Why would she lie? The flip side, why would [Appellant] lie? Why would he lie? Because he has everything to [lose]. I asked him the specific question did you lie down on the blanket on the floor during the sleepover on March 17[] and 18[], 2018. His response was no. On direct, he said he slept in his bed. Scared to death[, the victim's best friend] refuted that. Folks, I submit to you because he lied about that fact, what else did he lie about? I submit to you that the only truth [Appellant] told today was where he lived and what his name was. Everything else was a lie. On, no, he had a sleepover with two little girls. Nothing, nothing about this man is innocent. Everything about that little girl is innocent. Thank you for your time.

N.T., 8/27/19, at 100-101. A review of the notes of testimony demonstrates that Appellant did not lodge a contemporaneous objection during the Commonwealth's closing argument, at the conclusion of the argument, before the trial court charged the jury, or prior to the jury retiring for deliberation. *See id.* at 100-101, 124. Moreover, Appellant acknowledges that he did not object to the Commonwealth's closing argument. Appellant's Brief at 19. Therefore, we find Appellant waived this issue.[13] *See Rivera*, 983 A.2d at 1229.

Judgment of sentence affirmed.

_____

[13] Moreover, a review of the notes of testimony demonstrates that Appellant's counsel raised the inference that Appellant was telling the truth in his closing argument, where he stated,

> You saw [Appellant] face-to-face, 20 feet away. Did he sound like he was lying to you? Did his facial expressions bother you? Did they make you think twice? I would tend to argue or suggest to you that [Appellant] was telling the truth. He didn't hesitate. He didn't have to raise his eyes, didn't have to think, boy, what did I say before, what did I say two years ago. Will the jury believe this? I don't think so. I think he was straight out. I think he was. And I suggest you could believe him.

N.T., 8/27/19, at 95-96. The Commonwealth's closing argument, aside from responding to the truthfulness argument presented by Appellant's counsel, contrasted the testimony of the victim and her best friend against that of Appellant, with specific reference to the sleeping arrangements on the night of the incident and Appellant's claim that he slept in his own bed. The Commonwealth's closing argument was limited to the legitimate inferences that could be drawn from this contrasting testimony, and therefore, was not unreasonably prejudicial to Appellant. *See Commonwealth v. Eichinger*, 108 A.3d 821, 836 (Pa. 2014) (stating, the Commonwealth "has great discretion during closing argument; indeed, closing 'argument' is just that: argument" (citation omitted)).

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  3/8/2021